# LAW OFFICES OF

## O'KEKE & ASSOCIATES, P.C.

801 FRANKLIN AVENUE.
BROOKLYN NY, 11238
PHONE: (718) 855-9595
Attorneys for plaintiff

```
-----------------------------------X-----------------------------
ANTHONY KING,                      :UNITED STATES DISTRICT COURT
              Plaintiff,           :EASTERN DISTRICT OF NEW YORK
                                   :
                                   : CASE#:12-CV-2344(NGG) (RER)
      against                      :
                                   :   CIVIL ACTION
                                   :
DET. ROBERT LYNCH (SHIELD # 7218), :    FIRST AMENDED
DET. DAVID GROSS (SHIELD # 438),   :    COMPLAINT
SGT. CHRISTOPHER LAWRENCE (SHIELD  :
# 4104),                           :    PLAINTIFF DEMANDS
DET. JAMES ROSE (SHIELD # 7562),   :    TRIAL BY JURY
"JOHN DOE" AND "JANE DOE"          :
1'through'6 inclusive,             :
the names of the last defendants   :
being fictitious, the true names   :
of the defendants being unknown    :
to the plaintiff.                  :
              Defendant(s).        :
-----------------------------------X-----------------------------
```

   TAKE NOTICE, the Plaintiff, Mr. ANTHONY KING, hereby appears in this action by his attorneys, The Law Offices of O'keke & Associates, P.C., and demands that all papers be served upon him, at the address below, in this matter.

   Plaintiff, Mr. ANTHONY KING, by his attorneys, O'keke & Associates, P.C., complaining of the defendants, DET. ROBERT LYNCH (SHIELD # 7218), DET. DAVID GROSS (SHIELD # 438), SGT. CHRISTOPHER LAWRENCE (SHIELD #4104), DET. JAMES ROSE (SHIELD # 7562), "John Doe" and "Jane Doe" 1'through'6 collectively referred to as the Defendants, upon information and belief alleges as follows:

## NATURE OF THE ACTION

1.  This is an action at law to redress the deprivation of rights secured to the plaintiff under color of statute, ordinance, regulation, custom, and or to redress the deprivation of rights, privileges, and immunities secured to the plaintiff by the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States, and by Title 42 U.S.C. § 1983 [and § 1985], [and arising under the law and statutes of the State of New York].

2.  This is an action to further seek compensation for the serious and permanent personal injuries sustained by the plaintiff, as a result of the negligence of the defendants, perpetrated while said defendant police officers were in the process of illegally and unlawfully arresting, detaining and maliciously prosecuting plaintiff.

## JURISDICTION

3.  The jurisdiction of this Court is invoked under 28 U.S.C. §1343(3), this being an action authorized by law to redress the deprivation of rights secured under color of state and city law, statute, ordinance, regulation, custom and usage of a right, privilege and immunity secured to the plaintiff by the Fourteenth Amendment to the Constitution of the United States.  Jurisdiction of this court exists pursuant to 42 USC §1983 and under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

4.  All causes of action not relying exclusively on the aforementioned federal causes of action as a basis of this Court's jurisdiction are based on the Court's supplemental jurisdiction pursuant to 28 U.S.C. §1367 to hear state law causes of action. The events, parties, transactions, and injuries that form the basis of plaintiff's federal claims are identical to the events, parties, transactions, and injuries that form the basis of plaintiff's claims under applicable State and City laws.

5.  As the deprivation of rights complained of herein occurred within the Eastern District of New York, venue is proper in this district pursuant to 28 U.S.C. §§1391 (b) and (c).

Anthony King/First Amended Complaint.                                    **Page 2**

## PARTIES

6.    Plaintiff resides in Brooklyn, New York and is a resident of the State of New York.

7.    Defendants, Det. Robert Lynch (Shield # 7218), Det. David Gross (Shield # 438), Sgt. Christopher Lawrence (Shield #4104), and Det. James Rose (Shield # 7562), are Police Officers with the City of New York.

8.    Defendants "John Doe" and "Jane Doe" 1'through'7 are unknown police officers for the City of New York, acting under color of state law. They are being sued in both their individual and official capacity.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

9.    On or about May 12, 2010, at approximately 8:00PM, Defendants, Det. Robert Lynch (Shield # 7218), Det. David Gross (Shield # 438), Sgt. Christopher Lawrence (Shield #4104), Det. James Rose (Shield # 7562), "John Doe" and "Jane Doe" 1'through'6 employed with the New York City Police Department and assigned to the 71st Precinct, without probable cause and/or justification, arrested the plaintiff at or around President Street, in the Brooklyn, New York in the County of Kings and falsely charged plaintiff with Kidnapping and Rape.

10.   Prior to effecting the illegal arrest against the plaintiff, plaintiff was walking on President Street towards a Popeyes Restaurant at Utica Avenue in Brooklyn, New York, in the company of his friend, Kevin Evans and another gentleman. Suddenly, one of defendant officers, who was not in police uniform but wielding a gun, accosted plaintiff, Kevin Evans and the other gentleman. The defendant officer asked plaintiff, Kevin Evans and the other gentleman to get on the floor and they got on the floor immediately. Then an unmarked Police car pulled up and another defendant officer who also had a gun and was not in police uniform came and joined the initial defendant officer. The two defendant officers searched the plaintiff, Kevin Evans and the other gentleman and told them that they were being investigated for armed robbery. A second unmarked Police car came to the scene with other defendant officers. The defendant officers kept the plaintiff, Kevin Evans and the other gentleman on the floor for about twenty

minutes, handcuffed them and put them in two unmarked Police cars. The plaintiff, Kevin Evans and the other gentleman were transported by the defendant officers to the NYPD 71st Precinct. At the Precinct plaintiff was detained and pedigreed, subsequently spending several hours without the provision of any food, drink or access to restroom. Plaintiff's requested to be allowed to make a phone call but his request was denied. It was at this point that plaintiff was informed by defendant officers that he, Kevin Evans and the other gentleman were under arrest for kidnapping and rape without telling them the date, time and venue of the crimes and/or the name of the victim. Then defendant police officers asked Plaintiff where he had been over the last two weeks prior to his arrest and Plaintiff repeatedly told them that he spent most of his time between the house where he resided with his mother and the house of Kevin Evans. Defendant officers informed Plaintiff that the complainant had informed them that Plaintiff and Mr. Evans had kidnapped her and her friend and locked the complainant in the basement for several weeks and that Plaintiff and Mr. Evans had driven them to New Jersey and dropped her friend off and that she had finally escaped from Mr. Evans basement after two weeks of torture. Plaintiff informed defendant officers that the complaint's story was impossible, because there were few vicious and scary dogs that resided permanently in the basement and only Mr. Evans' uncle went down there so if she had been in the basement those dogs would have probably killed her. Plaintiff also told the officers that there was no way the complainant could have been held in the basement, because the neighbors had Mr. Evans house on twenty-four hour surveillance and would always call the police on Mr. Evans, because they were trying to take the house from him. The officers seemed confused and wanted an explanation, so Plaintiff informed them that Mr. Evans' house was located on President Street in Brooklyn, which was predominantly Jewish and that the neighbors had been trying to buy or take the house from Mr. Evans but he would not sell. Further, that Plaintiff and Mr. Evans stood out like a sore thumb on the street based on their lifestyle so the neighbors were always calling the police on them. Plaintiff further informed the officers that when they arrested Plaintiff and Mr. Evans they initially thought that one of their neighbors had falsely accused them of robbery or burglary. The same neighbors had previously complained of Mr. Evans, dogs being too noisy and too vicious, and posing a threat to other residents on the street. Also the house

Anthony King/First Amended Complaint.                                          **Page 4**

directly opposite Mr. Evans house and another house approximately two doors down had installed numerous surveillance cameras all pointing and focused on Mr. Evans house. One of the neighbors had promised that if he saw any criminal activity he would immediately hand over the surveillance recordings to the police. Plaintiff then informed the officers that if what the complainant was saying was true, then it should be on the neighbor's surveillance tapes as the tape recorded the entrance into Mr. Evans house continuously. Besides, the neighbors always had their eyes on Mr. Evans, and one of the neighbors would have to have seen the complainant either going in or coming out of Mr. Evans' house. Plaintiff also informed the defendant officers that the neighbors had a private Jewish police force and members of that police force always had Mr. Evans and his place under 24 hour surveillance. The defendant officers said they will investigate and get back to Plaintiff, but plaintiff never saw them again. Shortly afterward Plaintiff was transported to Central Booking, where eventually he was taken before a Judge. Plaintiff was also informed by his attorney that the rape kit that was performed on the alleged complainant prior to the arrest of the plaintiff came back negative. That the medical examination was performed by the defendants' own doctors. Also a forensic search of the alleged crime scene, by the defendants' own forensic team showed that there was absolutely no DNA or forensic evidence, supporting that the alleged complainant was ever in Mr. Evans house. Notwithstanding that the complainant had alleged that Plaintiff and Mr. Evans had driven her to New Jersey, a review of all the toll booth surveillance tapes revealed that too to be untrue. The complainant had also alleged that there was another witness who had initially been present, but when the police tracked the alleged witness down, the witness stated that the complainant's story was untrue. That notwithstanding all the factors that had been brought to the attention of the defendant officers, showing that no crime had been committed, the defendants decided to proceed with charging, and detaining the plaintiff and maintaining the prosecution of the plaintiff. After plaintiff was taken to the precinct, the defendant officers had to get the assistance of the ASPCA and/or their dog unit, to remove the vicious dogs that were in Mr. Evan's basement, before they could search the place. This completely contradicted the alleged description of Mr. Evans basement that had been provided by the complainant. Further, the complainant being a minor was

not given the standard swearbaility test that is routinely given to minors by the NYPD in regard to defendants, witnesses or complainants who are of minor age.

The following day, plaintiff was taken to the Central Booking Division of the Kings County Criminal Court where he was placed in a holding pen for several hours with numerous other arrestees. Plaintiff appeared before a judge and was charged with kidnapping and rape and the judge remanded plaintiff and set bail at $250,000.00. Plaintiff was detained at Rikers Island Jail for about seven months because he could not make the exorbitant bail. After all these various issues narrated above were raised to the Judge in the criminal court, Judge ordered the defendants to produce the complainant, for an in-camera interview, but the defendants never produced the complainant. Plaintiff was compelled to return to court on numerous occasions until the case against him was dismissed on October 6, 2011.

11. The defendants knew or should have known, based on all these facts and issues narrated in the preceding two paragraphs, that the plaintiff had committed no crime against the State of New York, and yet they proceeded to violating plaintiff's civil rights.

12. That the plaintiff was maliciously prosecuted and excessively detained, notwithstanding all the evidence and facts available to the defendant officers that no crime had been committed.

13. That even though the defendant police officers knew, or should have known based on the facts narrated above that no crime had been committed by the plaintiff, they still proceeded to arrest, charge, incarcerate and prosecute plaintiff just to intimidate plaintiff.

14. That at no time during the arrest was plaintiff read his Miranda rights.

15. After appearing before a criminal court judge, on or about October 6, 2011, the case was dismissed and the plaintiff released from police custody.

16. At no time did plaintiff commit any offense against the laws of New York City and or State for which an arrest may be lawfully made. At no time did the plaintiff possess any

drugs in violation of the laws of New York State, or commit any illegal acts, or engage in any conduct which in any way justified the brutal, malicious and unlawful actions of the police.

17. As a direct and proximate result of defendants' actions, plaintiff suffered and continues to suffer injuries, including but not limited to emotional distress, nightmares, migraines, severe headaches, and unwarranted severe anger bouts some or all of which may be permanent.

18. The unlawful arrest and prosecution of plaintiff, plaintiff's wrongful and excessive imprisonment because of defendants' knowledge of a lack of any legitimate cause or justification, were intentional, malicious, reckless and in bad faith.

19. As a direct and proximate result of defendants' actions, plaintiff suffered and continues to suffer, emotional distress, nightmares, migraines, severe headaches, and unwarranted severe anger bouts, some or all of which may be permanent.

20. As a direct and proximate result of his unlawful detention, confinement and prosecution, Plaintiff has lived in terror of his attack, he continues to suffer from nightmares, is fearful of going outside and when he sees the police, he suffers various emotional attacks, in addition, he has been unable to function normally which has caused a severe strain and breakdown in his personal relationships, in and outside of his home.

21. As a direct and proximate result of defendant's actions, plaintiff was arrested and detained without just or probable cause.

22. As a direct and proximate result of defendants' actions, plaintiff was deprived of rights, privileges and immunities under the Fourth and Fourteenth Amendments to the United States Constitution and the laws of the City of New York and the State of New York.

23. The actions of defendants, acting under color of State law, deprived plaintiff of his rights, privileges and immunities under the laws and Constitution of the United States; in particular, the rights to be secure in his person and property, to be free from the excessive use of force and

from malicious prosecution, abuse of process, and the right to due process.

24. By these actions, defendants have deprived plaintiff of rights secured by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. Section 1983.

25. Plaintiff continues to suffer physically and emotionally due to the actions of the defendants.

26. This action has been commenced within one year and ninety days after the happening of the event upon which the claim is based.

## AS A FIRST CAUSE OF ACTION:

42 U.S.C Section 1983-against Defendants Officers

27. Plaintiff hereby restates paragraphs 1-26 of this complaint, as though fully set forth below

28. By maliciously prosecuting Plaintiff, Defendant Officers, deprived Plaintiff of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. Section 1983, including, but not limited to, rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.

29. In addition, the Defendants officers conspired among themselves to deprive plaintiff of his constitutional rights secured by 42 U.S.C. Section 1983, and by the Fourth and Fourteenth Amendments to United States Constitution, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

30. The Defendants Officers acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD Officers. Said acts by the Defendants Officers were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said Defendants acted willfully, knowingly, and with the specific intent to deprive the Plaintiff of his constitutional rights secured by 42 U.S.C. Section 1983, and by the Fourth and Fourteenth Amendments to the United States Constitution.

31. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages herein before stated.

## AS A SECOND CAUSE OF ACTION:

Malicious Prosecution--all defendants

32. Plaintiff hereby restates paragraph 1-31 of this complaint, as though fully set forth below

33. The Defendants Officers wrongfully and illegally detained, and imprisoned the Plaintiff and maliciously prosecuted him.

34. The wrongful arrest, imprisonment and malicious prosecution of the Plaintiff were carried out without a valid warrant, without Plaintiff's consent, and without probable cause or reasonable suspicion.

35. At all relevant times, the Officers Defendants acted maliciously in apprehending, detaining, imprisoning and prosecuting the Plaintiff.

36. That even after the defendant officers knew that it was impossible that the alleged crime occurred, based on the facts narrated in the preceding paragraphs, they continued to detain the plaintiff and prosecute the plaintiff. During this period, the Plaintiff was unlawfully and wrongfully assaulted, harassed, detained, and threatened.

37. Throughout this period, the Plaintiff was unlawfully, wrongfully, and unjustifiably detained, deprived of his liberty, and maliciously prosecuted.

38. All of the foregoing occurred without any fault or provocation on the part of the Plaintiff.

39. The Defendants Officers acted with a knowing, willful, wanton, grossly reckless, unlawful, unreasonable, unconscionable, and flagrant disregard of the Plaintiff's rights, privileges, welfare, and well-being and are guilty of egregious and gross misconduct toward Plaintiff.

40. As a direct and proximate result of the misconduct and

Anthony King/First Amended Complaint.                                **Page 9**

abuse of authority detailed above, plaintiff sustained the damages herein-before stated.

## AS FOR A THIRD CAUSE OF ACTION:

Excessive Pretrial Detention—all defendants.

41. Plaintiff hereby restates paragraph 1-40 of this Complaint, as though fully set forth below.

42. Based on the facts narrated in preceding paragraphs of this complaint, defendant police officers knew or should have know that plaintiff committed no crime based on overwhelming exculpatory evidence favorable to plaintiff and available to defendant officers; however defendant officer willfully and maliciously withheld and concealed this evidence from the prosecutor and other relevant authorities thereby causing plaintiff to be detained at Rikers Island Jail for about seven months because he could not make the exorbitant bail.

43. Plaintiff's excessive detention at Rikers Island jailed was caused by defendant officers willful and malicious refusal to investigate and or/disclose exculpatory evidence favorable to the Plaintiff which was in the sole custody of the defendant police officers.

44. The Defendants Officers engaged in extreme and outrageous conduct, intentionally and recklessly causing severe emotional distress to plaintiff.

45. Plaintiff's emotional distress has damaged his personal and professional life because of the severe mental pain and anguish which were inflicted through deliberate and excessive detention and malicious prosecution by the Defendants Officers.

46. As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff sustained the damages herein-before stated.

**WHEREFORE**, plaintiff respectfully requests judgment against the Defendants as follows:

1. On the First Cause of Action against all the Defendants,

Anthony King/First Amended Complaint.                    **Page 10**

compensatory and punitive damages in an amount to be determined at trial, and reasonable attorneys' fees and costs under 42 U.S.C. Section 1988;

2.   On the Second Cause of Action, against all Defendants, compensatory damages in an amount to be determined at trial, and punitive damages against the Officers Defendants in an amount to be determined at trial;

3.   On the Third Cause of Action, against all Defendants, compensatory damages in an amount to be determined at trial, punitive damages against the Officers Defendants in an amount to be determined at trial;

4.   Such other and further relief as this Court may deem necessary in the interest of justice.


Dated:      May 31, 2013
            Brooklyn, New York


                    Respectfully Submitted


                    */S/ John Iwuh*
                    _____
By:     John Iwuh, Esq. [JI-2361] **Of Counsel**
        801 Franklin Avenue,
        Brooklyn, New York 11238
        Tel. No.  :( 718) 855-9595

        Patrick O'keke, Esq.
        801 Franklin Avenue,
        Brooklyn, New York 11238
        Tel. No.  :( 718) 855-9595

Anthony King/First Amended Complaint.                    **Page 11**