UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ANTHONY KING,

                              Plaintiff,                              **MEMORANDUM & ORDER**

           -against-                                                  **12-CV-2344 (NGG) (RER)**

THE CITY OF NEW YORK, "JOHN DOE" AND
"JANE DOE" 1 'through' 6, inclusive, the names of the
last defendants being fictitious, the true names of the
defendants being unknown to the plaintiff, DETECTIVE
ROBERT LYNCH, DETECTIVE DAVID GROSS,
SERGEANT CHRISTOPHER LAWRENCE,
DETECTIVE JAMES ROSE,

                              Defendants.
------------------------------------------------------------------------X
KEVIN EVANS,

                              Plaintiff,

           -against-                                                  **13-CV-0037 (NGG) (RER)**

DETECTIVE ROBERT LYNCH,
CHARLES J. HYNES, THE CITY OF NEW YORK,

                              Defendants.
------------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

       Plaintiff Anthony King ("King") and Plaintiff Kevin Evans ("Evans") (collectively,

"Plaintiffs") bring these consolidated actions pursuant to 42 U.S.C. § 1983 against Defendants

City of New York (the "City"), Charles J. Hynes, Kings County District Attorney, and several

known and unknown officers of the New York City Police Department (collectively,

"Defendants"). Plaintiffs seek compensation for the alleged violation of their constitutional

rights, arising out of their arrests and detention, which lasted from May 2010 to some time in

2011. Before the court are Plaintiff King's and Plaintiff Evans's objections to Magistrate Judge

1

Ramon E. Reyes, Jr.'s Report and Recommendation ("R&R"), dated July 31, 2014, which

recommends granting with prejudice Defendants' Motion to Dismiss in its entirety. (King Dkt.

43; Evans Dkt. 21.)[1] Defendants did not object to the R&R. For the reasons set forth below,

both Plaintiffs' objections are OVERRULED and the R&R is ADOPTED in full.

## I.    BACKGROUND

The factual background, drawn from King's and Evans's amended complaints, is set forth

in detail in Judge Reyes's R&R. (See id. at 3-5.) On May 12, 2010, King and Evans were

walking on President Street in Brooklyn when they were arrested by New York City Police

Department officers.[2] (Id. at 3.) The following day, King and Evans were arraigned in state

court pursuant to criminal complaints charging them with various counts of criminal sexual acts,

sexual abuse, and assault. (Id. at 4.) On June 15, 2010, King and Evans were indicted by a

grand jury, which charged them with multiple counts that included criminal sexual acts, sexual

misconduct, endangering the welfare of a child, assault, and harassment. (Id.) Both Plaintiffs

were subsequently detained at Rikers Island. (Id.) King was detained for "about seven months"

(King First Amended Complaint ("FAC") (King Dkt. 24) ¶ 10); Evans was released on his own

recognizance at some point in May 2011. (Evans First Amended Complaint ("FAC") (Evans

Dkt. 11) ¶ 18.) On October 6, 2011, the criminal cases against both King and Evans were

terminated in their favor. (R&R at 4-5.)

---

[1] As discussed below, Plaintiffs' cases were consolidated but maintained separate dockets. Therefore, in this Memorandum the court will refer to docket 12-CV-2344 as "King Dkt." and docket 13-CV-0037 as "Evans Dkt."

[2] Other documents submitted by Defendants in briefing their Motion to Dismiss indicate that on May 11, 2010, the alleged victim reported to the police that she had been sexually assaulted by three males who held her in a basement at a house on President Street for approximately two weeks. (Decl. of Nicholas Melissinos in Supp. of Mot. to Dismiss ("Melissinos Decl."), Ex. E (Evans Dkt. 17-5) at 1; Melissinos Decl., Ex. F (Evans Dkt. 17-6).) On May 12, 2010, the detectives took the alleged victim to the area, where she positively identified King and Evans as the perpetrators. (Melissinos Decl., Ex. E at 2.) See also infra Part III.B.1.

Plaintiff King originally filed this action against the City and unknown members of the New York City Police Department on May 11, 2012, alleging unlawful arrest and detention in violation of his Fourth, Fifth, and Fourteenth Amendment rights, as well as related claims arising under the New York State Constitution and common law. (King Compl. (King Dkt. 1).) On September 7, 2012, the City filed a letter seeking a pre-motion conference in anticipation of its motion to dismiss King's original Complaint. (Sept. 7, 2012, Def. Ltr. (King Dkt. 9).) In light of its anticipated motion, the City also moved to stay discovery, which the court granted on Plaintiff King's consent.[3] (Mot. to Stay (King Dkt. 10); King Dkt. Sept. 20, 2012, Order.) After the City moved to dismiss King's original Complaint, this court adopted an April 15, 2013 Report and Recommendation ("April 2013 R&R") by Judge Reyes, dismissing with prejudice all claims except King's causes of action for malicious prosecution and excessive detention, for which he received leave to replead. See King v. City of New York, No. 12-CV-2344 (NGG) (RER), 2013 WL 2285197, at *1 (E.D.N.Y. May 23, 2013) (King Dkt. 23).[4] Eight days later, King filed his Amended Complaint, naming as Defendants Detective Robert Lynch, Detective David Gross, Sergeant Christopher Lawrence, and Detective James Rose. (King FAC.)

Before the April 2013 R&R had been issued and adopted, however, on January 1, 2013, Plaintiff Evans filed a separate action against the City, Detective Lynch, and Defendant Hynes, alleging unlawful arrest and excessive detention arising from the same incident involving Plaintiff King. (Evans Compl. (Evans Dkt. 1).) On July 29, 2013, after this court had adopted the April 2013 R&R, Evans's action was consolidated with King's (King Dkt. July 29, 2013, Order) on the parties' consent (Mot. to Consol. (King Dkt. 31) at 1), as both involved similar factual and legal issues. See Local Civil Rule 50.3.1(a). In light of this court's adoption of the

---

[3] It appears that King explicitly reserved the right to argue, in opposition to the City's anticipated motion, that more discovery would be needed. (See Mot. to Stay at 1.)

[4] All of King's claims against the City were dismissed with prejudice. See King, 2013 WL 2285197, at *9-10, 12.

April 2013 R&R with respect to King's Complaint, Evans filed his Amended Complaint on September 26, 2013, alleging many of the same claims advanced in King's original Complaint: false arrest, malicious prosecution, excessive pretrial detention, § 1983 municipal liability, and negligent hiring, training and retention.[5] (Evans FAC.) On January 10, 2014, Defendants moved to dismiss both Amended Complaints (King Dkt. 37; Evans Dkt. 15), and this court referred the motions to Judge Reyes for a report and recommendation. (King Dkt. May 5, 2014, Order; Evans Dkt. May 2, 2014, Order.)

On July 31, 2014, Judge Reyes issued his R&R, recommending that the court dismiss with prejudice both Plaintiffs' Complaints in their entirety. (R&R at 43.) Both King and Evans timely filed objections (King Obj. (King Dkt. 44); Evans Obj. (Evans Dkt. 22)), to which Defendants filed a response (Resp. to Pls.' Obj. (King Dkt. 46; Evans Dkt. 24)).

## II. STANDARD OF REVIEW

When a magistrate judge issues an R&R, and it has been served on the parties, the parties have fourteen days in which to file an objection to the R&R. Fed. R. Civ. P. 72(b)(2). If the district court receives timely objections to the R&R, the court makes "a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. [The district court] may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). In order to obtain de novo review, however, an objecting party "must point out the specific portions of the report and recommendation to which [that party] object[s]." Libbey v. Vill. of Atl. Beach, 982 F. Supp. 2d 185, 199 (E.D.N.Y. 2013); see also Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file specific written objections to the [R&R]."). Nonetheless, "an objection to a report and

---

[5] Evans also asserted a claim based on the denial of his right to a speedy trial under the Sixth Amendment. (Evans FAC ¶¶ 38-40.) King did not bring this claim in either of his complaints.

recommendation in its entirety does not constitute a specific written objection within the meaning of Rule 72(b)." Williams v. Woodhull Med. & Mental Health Ctr., 891 F. Supp. 2d 301, 310 (E.D.N.Y. 2012).

Moreover, "[w]here objections consist of 'conclusory or general arguments, or simply reiterate the original arguments,' or are merely an 'attempt to engage the district court in rehashing of the same arguments set forth in the original petition,' the Court reviews [an R&R] for clear error." Jemine v. Dennis, 901 F. Supp. 2d 365, 371 (E.D.N.Y. 2012) (quoting DiPilato v. 7-Eleven, Inc., 662 F. Supp. 2d 333, 339 (S.D.N.Y. 2009)); see also Mario v. P&C Food Mkts., Inc., 313 F.3d 758, 766 (2d Cir. 2002) (holding that "[m]erely referring the court to previously filed papers or arguments does not constitute an adequate objection" under Rule 72(b)). In addition, "[p]ortions of the R&R to which a party makes no objection are reviewed for clear error." Bouzzi v. F & J Pine Rest., LLC, 841 F. Supp. 2d 635, 638 (E.D.N.Y. 2012). "A decision is 'clearly erroneous' when the Court is, 'upon review of the entire record, left with the definite and firm conviction that a mistake has been committed.'" DiPilato, 662 F. Supp. 2d at 339-40 (quoting United States v. Snow, 462 F.3d 55, 72 (2d Cir. 2006)).

## III. DISCUSSION

Both King and Evans have filed objections to the R&R. (King Dkt. 44; Evans Dkt. 22.) Although certain of their objections necessarily overlap, the court will consider each Plaintiff's objections separately and individually.

### A. King's Objections

King points out that Section 636(b) requires the court to engage in de novo review of the portions of an R&R to which objections are made, and "hereby objects to all the portions of the [R&R] . . . granting defendants' motion to dismiss." (King Obj. at 2.) As this court has

specifically held that "an objection to a report and recommendation in its entirety does not constitute a specific written objection," the court declines to engage in a broad review of the entire R&R de novo. Williams, 891 F. Supp. 2d at 310. Instead, the court will review objections on an individual basis.

### 1.    Objection 1: Excessive Pretrial Detention

Plaintiff King argues that Judge Reyes "erred in holding that Plaintiff did not plead sufficient facts to support his claim" for excessive pretrial detention. (King Obj. at 2.) The only explanation King offers, however, is that "the magistrate disregarded the appropriate standard" under Federal Rule of Civil Procedure 12(b)(6), that Judge Reyes "failed to accord the assertion and allegations made in Plaintiff's amended complaint the liberal interpretation and inferences it deserved," and that "[t]he Magistrate's ruling imposed an [ ] unwarranted and unjustified obligation on the Plaintiff to prove his case in his complaint." (Id. at 3.) Claims like these are exactly the type of vague and conclusory assertions courts deem insufficient to warrant de novo review. Moreover, King submits that "[t]o avoid repeating Plaintiff's argument I respectfully refer the court to Plaintiff's Amended Complaint and Plaintiff's Opposition to defendant's motion to dismiss." (Id. at 3-4.) The Second Circuit has specifically held, however, that simply referring a court to previously filed papers does not constitute an adequate objection to an R&R. See Mario, 313 F.3d at 766.

As a result, the court reviews the dismissal of King's excessive detention claim for clear error only. In this circuit, a plaintiff can recover for excessive pre-trial detention by showing that: "(i) [the plaintiff] was wrongfully incarcerated for an unreasonable length of time; (ii) the defendant-officer, by expending reasonable cost and effort, could have conclusively established the plaintiff's innocence; (iii) the defendant-officer failed to do so; and (iv) the defendant-officer

6

acted with . . . intent to unlawfully detain the plaintiff or deliberate indifference to his

constitutional rights." Thompson v. City of New York, 603 F. Supp. 2d 650, 656 (S.D.N.Y.

2009) (citing Russo v. City of Bridgeport, 479 F.3d 196, 210-11 (2d Cir. 2007)). In the R&R,

Judge Reyes observed that while the allegedly exculpatory evidence—such as allegations that the

neighbors would have reported anything suspicious, the negative results of the rape kit test

performed on the alleged victim, the lack of the alleged victim's DNA at the crime scene, and the

absence of any record that Plaintiff took the alleged victim to New Jersey—may have tended to

create doubt as to whether Plaintiff committed the crime, none of this evidence would have

"affirmatively" or "conclusively" established Plaintiff's innocence. (R&R at 29-30.) Having

found nothing clearly erroneous in this analysis, the court overrules this objection.

### 2.    Objection 2: Malicious Prosecution

King objects at greater length to the dismissal of his malicious prosecution claim. To

state a claim for malicious prosecution, a plaintiff is required to establish: "(1) the initiation or

continuation of a criminal proceeding; (2) termination of the criminal proceeding in plaintiff's

favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a

motivation for defendant's actions." Jocks v. Tavernier, 316 F.3d 128, 136 (2d Cir. 2003). King

argues (a) that Defendants "willfully and maliciously withheld and concealed . . . pieces of

exculpatory evidence from the prosecutor" (and thus could be said to have initiated or continued

the criminal proceeding); and (b) that defendants lacked probable cause because a victim's report

"should have raised doubts [as to] whether defendant officers should have done more

investigation to verify and corroborate it." (King Obj. at 11, 14.) Not only are these objections

"simply an attempt to rehash the same arguments that the magistrate considered and found

deficient," see J.E. ex rel. Edwards v. Ctr. Moriches Union Free Sch. Dist., 898 F. Supp. 2d 516,

527 (E.D.N.Y. 2012), this section of King's brief is in fact identical—word for word—to the equivalent portion of his Opposition to Defendants' Motion to Dismiss. Compare King Mem. in Opp'n to Mot. to Dismiss ("Opp'n Mem.") (King Dkt. 40) at 9-13, with King Obj. at 10-14. This court therefore reviews the R&R with respect to King's second objection for clear error only. See Jemine, 901 F. Supp. 2d at 371 (applying clear error where "it appear[ed] that defendants merely uploaded as objections the very document they submitted to the magistrate judge in opposition to plaintiff's motion").

Regarding the first element of a malicious prosecution claim, Judge Reyes noted that because the felony complaint was signed by a legal assistant of the Kings County District Attorney's Office—based on information obtained directly from the alleged victim—the court would presume that the "chain of causation" between the police and the initiation of the prosecution had been broken by the exercise of the prosecutor's independent judgment, see, e.g., Levy v. City of New York, 935 F. Supp. 2d 575, 588 (E.D.N.Y. 2013), unless Plaintiffs could show that the officers withheld material information from the prosecutor, see, e.g., Myers v. Cnty. of Nassau, 825 F. Supp. 2d 359, 367 (E.D.N.Y. 2011) (officer may have initiated a criminal proceeding by "knowingly creat[ing] false information that creates the basis for the prosecution"). (R&R at 15-17.) Judge Reyes found, however, that not only was the allegedly exculpatory evidence not "plainly exculpatory," and thus not required to be disclosed to a prosecutor, see Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006), but also that this evidence was in fact part of the criminal file, such that it had not actually been withheld by the police.[6]

---

[6] There is some dispute as to precisely when the alleged exculpatory evidence came to light. (R&R at 17.) Nevertheless, as Judge Reyes pointed out, because none of it was "plainly exculpatory," that Defendants may have become aware of this evidence between Plaintiffs' arrest and indictment is not sufficient to create a plausible claim to relief.

(R&R at 17-18.) As a result, Judge Reyes did not clearly err in finding that King had not satisfied this element of the claim.

With respect to the second element of a malicious prosecution claim, Judge Reyes observed that an indictment by a grand jury creates a presumption that a prosecution was supported by probable cause, and that in order to rebut the presumption, a plaintiff must show the indictment was obtained by "fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith," see, e.g., Manganiello v. City of New York, 612 F.3d 149, 162 (2d Cir. 2010). (R&R at 19.) Moreover, Judge Reyes noted that "[t]he simple act of not disclosing to the grand jury all evidence that could potentially benefit the accused at a grand jury hearing does not necessarily rise to the level of bad faith," see, e.g., Parisi v. Suffolk Cnty., No. 04-CV-2187 (ENV) (ETB), 2009 WL 4405488, at *10 (E.D.N.Y. Nov. 30, 2009). (R&R at 20.) In other words, "the police and prosecutors cannot be said to have improperly concealed evidence every time the plaintiff is able to show that they could have done more or could have disclosed more. What is required is proof that the police conduct deviated egregiously from statutory requirements or accepted practices applicable in criminal cases." Parisi, 2009 WL 4405488, at *10 (quoting Gisondi v. Town of Harrison, 528 N.E.2d 157, 160 (N.Y. 1998)).

Notably, courts have held that police officers act in bad faith only when they fail to disclose evidence that would "conclusively" establish the plaintiff's innocence, see Gisondi, 528 N.E.2d at 161, or "negate the possibility that the plaintiff had committed the crime." See, e.g., Bonds v. City of New York, No. 12-CV-1772 (ARR) (MDG), 2014 WL 2440542, at *8 (E.D.N.Y. May 30, 2014) (quoting Williams v. City of New York, No. 02-CV-3693 (CBM), 2003 WL 22434151, at *7 (S.D.N.Y. Oct. 23, 2003), aff'd, 120 F. App'x 388 (2d Cir. 2005)). Here, Judge Reyes found that while "examinations of the alleged victim and crime scene did not

directly evince that the alleged victim was raped, had hot water poured on her, or was in the basement of the alleged crime scene," they also did not conclusively prove that King did not commit the alleged crimes, and were therefore insufficient to rebut the presumption of probable cause. (R&R at 22.) Since this analysis is not clearly erroneous, King's second objection is overruled.[7]

### 3.  Objection 3: Rule 26 Disclosures

King's final objection is that Judge Reyes "erred by disregarding Plaintiff's request that defendant comply with the order of court for initial disclosure." (King Obj. at 5.) It appears that Judge Reyes did not address this point, although King raised it in his Opposition Memorandum. (King Opp'n Mem at 16-21.) Although the portion of King's brief articulating this objection is taken verbatim from the corresponding section in his Opposition Memorandum, see, e.g., Jemine, 901 F. Supp. 2d at 371 (applying clear error in similar circumstances), because Judge Reyes did not consider this argument in the R&R, the court will address de novo the question of whether King is entitled to initial disclosures. See, e.g., Pall Corp. v. Entegris, Inc., 249 F.R.D. 48, 52 (E.D.N.Y. 2008).

King argues that "Defendants have failed to provide Plaintiff with the information, documents and facts which Rule 26(a)(1) [ ] automatically imposes on parties," and which are in the "exclusive possession" of Defendants. (King Obj. at 6-7.) Under Federal Rule of Civil Procedure 26(a)(1) ("Initial Disclosures"), a party "must, without awaiting a discovery request, provide to the other part[y]" certain information delineated under the Rule, "[e]xcept as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court." Fed. R. Civ. P. 26(a)(1)(A) (emphasis added). King points out that on September 4, 2012, Judge Reyes

---

[7] Judge Reyes also found that King failed to satisfy the pleading requirements with respect to actual malice, the fourth element of a malicious prosecution claim. (R&R at 24-25.) King offers no objection with respect to this analysis, however, and this court finds no clear error in Judge Reyes's conclusion.

ordered that the parties complete the automatic disclosures required under Rule 26(a)(1) by

September 7, 2012. (King Obj. at 5-6; see also Case Mgmt. Plan (King Dkt. 8).) On September

10, 2012, however, Defendants filed a Motion to Stay Discovery Pending Resolution of

Defendants' Motion to Dismiss, which the court granted as unopposed. (Defs.' Mot. to Stay;

Sept. 20, 2012, Order.) King now argues that the order granting the Motion to Stay "does not

exempt Defendants from complying with the initial and automatic disclosure mandated by Rule

26(a)(1)." (King Obj. at 8-9.) According to King, "[t]his is because Rule 26(a)(1) [ ] requires

initial disclosure to be made independent of discovery and even prior to discovery request.

Disclosure pursuant to Rule 26(a)(1) [ ] is mandatory, automatic and initial." (Id. at 9 (emphasis

in original).)

    King's argument is incorrect as a matter of law. By its own terms, initial disclosure

under Rule 26(a)(1) is automatic, "[e]xcept . . . as otherwise stipulated or ordered by the court."

Fed. R. Civ. P. 26(a)(1)(A). Pursuant to Rule 26(c), upon a showing of "good cause" a court

may issue an order "forbidding the disclosure or discovery" in order "to protect a party or person

from annoyance . . . or undue burden or expense." Fed R. Civ. P. 26(c)(1)(A) (emphasis added).

As Rule 26(c) refers to both "the disclosure" and discovery, it seems clear that the court's power

to issue a protective order applies to initial disclosures as well as subsequent discovery requests.

See, e.g., Flores v. S. Peru Copper Corp., 203 F.R.D. 92, 94 (S.D.N.Y. 2001) ("[A] leading

treatise recognizes a district court's discretionary power to stay all Rule 26(a)(1) initial

disclosure 'pending resolution of a motion to dismiss, if the defendant makes a strong showing

that the plaintiff's claim is unmeritorious.'") (emphasis added) (quoting 6 Moore's Federal

Practice § 26.22[3][b] at 26-64 (3d ed. 1997)). Indeed, in this circuit courts have routinely held

that a stay of discovery is appropriate "pending resolution of a potentially dispositive motion

where the motion appears to have substantial grounds or . . . does not appear to be without foundation in law." Johnson v. New York Univ. Sch. of Educ., 205 F.R.D. 433, 434 (S.D.N.Y. 2002) (internal quotation marks omitted); see also Computer Assocs. Int'l, Inc. v. Simple.com, Inc., 247 F.R.D. 63, 68-69 (E.D.N.Y. 2007) ("Under Rule 26, courts have discretion to impose a stay of discovery pending the determination of dispositive motions by the issuance of a protective order.").

Here, Judge Reyes issued an order granting Defendants' Motion to Stay Discovery on September 20, 2012. (Sept. 20, 2012, Order.) Plaintiff King did not oppose the order then, nor does he appear to challenge the propriety of the order now. Furthermore, neither King nor Evans ever moved to lift the stay or compel discovery pursuant to Federal Rule of Civil Procedure 26(b)(2)(B). King also does not suggest that the September 20, 2012 order expired. Instead, King appears to argue that Rule 26(a)(1) disclosure is immune from valid protective orders issued by the court. Because this assertion is patently contrary to law, King's last objection is overruled.[8]

## B.    Evans's Objections

Evans begins his objections by claiming that district courts "must consider any objection to a Magistrate's Recommendation de novo." (Evans Obj. at 1.) This mischaracterizes the law in the Second Circuit. See, e.g., Libbey, 982 F. Supp. 2d at 199 (noting that parties "must point out the specific portions of the report and recommendation to which they object" to obtain de novo review) (citing Barratt v. Joie, No. 96-CV-0324 (LTS) (THK), 2002 WL 335014, at *1

---

[8] In his objection to the R&R, King argues separately that Judge Reyes "erred in holding that defendants are entitled to qualified immunity." (King Obj. at 14.) In fact, Judge Reyes expressly declined to address the issue of qualified immunity, having found that Plaintiffs failed to plead a plausible federal claim. (R&R at 43 (citing Hoffman v. Town of Southampton, 893 F. Supp. 2d 438, 450 n.8 (E.D.N.Y. 2012)).) As a result, the court has reviewed this portion of the R&R for clear error and finds none. See Bouzzi v. F & J Pine Rest., LLC, 841 F. Supp. 2d 635, 638 (E.D.N.Y. 2012) (reviewing unobjected-to portions of an R&R for clear error). Thus, to the extent this constitutes an objection, it is overruled.

(S.D.N.Y. Mar. 4, 2002)). Furthermore, Evans "incorporates all prior pleadings and arguments into [his objections] and objects to the entire Report and Recommendations of the Magistrate." (Evans Obj. at 1.) Because "an objection to a report and recommendation in its entirety does not constitute a specific written objection," Williams, 891 F. Supp. 2d at 310, the court will instead review Evans's objections individually as well.

### 1. Objection 1: Reliance on Extrinsic Documents

Evans first argues that Judge Reyes's reliance on documents outside the pleadings converted Defendants' Motion to Dismiss into a motion for summary judgment. (Evans Obj. at 2-3.) Evans contends that as a result, under Federal Rule of Civil Procedure 12, Plaintiffs were entitled to notification and a "reasonable opportunity" for discovery. (Id.) Since Evans objects to a specific portion of the R&R (see R&R at 6-8), his objection is reviewed de novo. See Libbey, 982 F. Supp. 2d at 199.

According to Rule 12:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d). Thus as a general rule, courts "do not consider matters outside the pleadings in deciding a motion to dismiss for failure to state a claim." Nakahata v. New York-Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 202 (2d Cir. 2013) (citing Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 154-55 (2d Cir. 2006)). Moreover, "[a]s indicated by the word '[must],' the conversion of a Rule 12(b)(6) motion into one for summary judgment under Rule 56 when the court considers matters outside the pleadings is strictly enforced and mandatory." Id. (citing Global Network, 458 F.3d at 155). "[N]otwithstanding Rule 12(b)'s conversion requirement," however, courts may consider extrinsic materials if they

13

are "integral to the complaint" or appropriate subjects for judicial notice. See Global Network, 458 F.3d at 156 (citing Cortec Indus. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) (integral to the complaint); Kramer v. Time Warner Inc., 937 F.2d 767, 773-74 (2d Cir. 1991) (judicial notice)); see also Reyes v. Fairfield Properties, 661 F. Supp. 2d 249, 255 n.1 (E.D.N.Y. 2009) ("It is well-settled that, in considering a motion to dismiss, the Court is entitled to take judicial notice of documents integral to or referred to in the complaint, as well as documents filed in other courts and other public records.").

For materials to be considered integral to a complaint, "a necessary prerequisite for that exception is that the 'plaintiff rely on the terms and effect of the document in drafting the complaint; mere notice or possession is not enough.'" Global Network, 458 F.3d at 156 (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (courts may consider an extrinsic document when the complaint "relies heavily upon its terms and effect")). "Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint," however, "the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." Chambers, 282 F.3d at 153. The purpose of this exception is to "prevent[ ] plaintiffs from generating complaints invulnerable to Rule 12(b)(6) simply by clever drafting." Global Network, 458 F.3d at 157.

In addition, "[a] court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." Global Network, 458 F.3d at 157 (quoting Int'l Star Class Yacht Racing Assn'n v. Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998)). "If the court takes judicial notice, it does so in order 'to determine what statements they contained'—but

'again not for the truth of the matters asserted.'" Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007) (emphasis in original) (quoting Kramer, 937 F.2d at 774).

Without addressing these two exceptions, Evans argues that it was "inappropriate to dismiss a claim based on documents outside of the pleadings, particularly in the case at bar where the Magistrate relied heavily on said documents to prepare his Report and Recommendation for dismissal." (Evans Obj. at 3.) In the R&R, Judge Reyes noted that Defendants had annexed copies of several documents to their Motion to Dismiss:[9] (1) the victim's written statement (Decl. of Nicholas Melissinos in Supp. of Mot. to Dismiss ("Melissinos Decl."), Ex. B (Evans Dkt. 17-2)); (2) the criminal complaint (Melissinos Decl., Ex. C (Evans Dkt. 17-3)); (3) the grand jury indictment (Melissinos Decl., Ex. D (Evans Dkt. 17-4)); (4) a state court decision denying a motion to suppress the detectives' photo identification procedures and Evans's oral statement to the police (Melissinos Decl., Ex. E (Evans Dkt. 17-5)); (5) a police complaint follow-up informational report dated May 12, 2010 (Melissinos Decl., Ex. F (Evans Dkt. 17-6)); (6) a detective bureau unusual occurrence report dated May 13, 2010 (Melissinos Decl., Ex. G (Evans Dkt. 17-7)); (7) Evans's arrest report (Melissinos Decl., Ex. H (Evans Dkt. 17-8)); and (8) a state court decision denying Evans's motion for a speedy trial and release (Melissinos Decl., Ex. I (Evans Dkt. 17-9)). Judge Reyes then found that these exhibits were appropriate for consideration with respect to Defendants' Motion to Dismiss "because King and Evans had actual notice of these documents and, presumably, relied upon them in drafting their amended complaints." (R&R at 7-8.)

---

[9] Defendants had therefore annexed several documents to their Motion to Dismiss with respect to King's Complaint as well, (see King Dkt. 39) but King has not challenged Judge Reyes's decision to consider these documents in the R&R.

First, it seems clear that Plaintiff Evans relied on several of these documents in drafting his Complaint.[10] For example, Evans describes statements made by the alleged victim to the police (Evans FAC ¶ 11), and recounts the specific charges contained in his criminal indictment, (id. ¶ 14). Second, several of the annexed documents were part of the criminal court file, and were therefore public records of which Judge Reyes could take judicial notice.[11] See, e.g., Wingate v. Deas, No. 11-CV-1000 (ARR), 2012 WL 1134893, at *1 n.1 (E.D.N.Y. Apr. 2, 2012) (taking judicial notice of plaintiff's arrest reports); Kanderskaya v. City of New York, --- F. Supp. 2d ---, 2014 WL 1383881, at *1 (S.D.N.Y. Apr. 9, 2014) (taking judicial notice of police reports); Garnett v. City of New York, No. 13-CV-7083 (JSR), 2014 WL 1383255, at *2 (S.D.N.Y. Apr. 4, 2014) (taking judicial notice of criminal complaint and trial transcript from plaintiff's associated criminal case); Vasquez v. City of New York, No. 99-CV-4606 (DC), 2000 WL 869492, at *1 n.1 (S.D.N.Y. 2000) (taking judicial notice of documents in plaintiff's criminal file—including arrest report, criminal felony complaint, and indictment—as public records). Consequently, they could be considered in evaluating Defendants' Motion to Dismiss,

---

[10] The record also suggests that Evans had actual notice with respect to each of these documents. As one of Defendants' attorneys explained to Judge Reyes:

> One of the attorneys that [is] working with the plaintiff in the King [case] represented them in the criminal matter. . . [a]nd produced to us 300 pages of Rosario materials which lay[ ] . . . all these theories out. It has when the DNA evidence came in. It has when the witness gave the statement that undermines the victim. It had everything in it. So that's what I used in the motion, Your Honor.

(Sept. 17, 2013 Hr'g Tr. (King Dkt. 35) at 15-16.) Evans's actual notice and possession of these documents further strengthens the case for taking judicial notice of documents from his criminal case. See Abdul-Rahman v. City of New York, No. 10-CV-2778 (ILG), 2012 WL 1077762, at *3 (E.D.N.Y. Mar. 30, 2012) ("The search warrant, criminal complaint, and indictment are clearly appropriate for consideration in deciding a Rule 12(c) motion because plaintiff had possession of these documents, incorporated them by reference in the Complaint, and their authenticity is not in question.").

[11] The two state court opinions are also indisputably public records of which Judge Reyes was entitled to take judicial notice. See, e.g., Hayes v. Perotta, 751 F. Supp. 2d 597, 599 (S.D.N.Y. 2010) (noting that courts may take judicial notice of transcripts and judicial opinions from other court proceedings).

not for the truth of the matters asserted but simply as evidence of what was stated in the documents. See Roth, 489 F.3d at 509.

Perhaps most significantly, Plaintiff Evans himself annexed several documents from this criminal case to his Opposition Memorandum. (See Decl. of Obayomi Awoyinfa in Opp'n to Mot. to Dismiss ("Awoyinfa Decl.") (Evans Dkt. 19).) Moreover, it appears that Evans relied heavily on these documents in constructing his FAC, particularly when recounting the alleged exculpatory evidence that forms the purported basis for his multiple causes of action. For example, Evans's FAC discusses with substantial detail a statement made to the Deputy Bureau Chief of the Sex Crimes/Special Victims Bureau by a friend of the alleged victim, who maintained that she "has never been to New Jersey with the [alleged victim], nor was she in a car with [the alleged victim] and [Evans]." (Evans FAC ¶ 10; Awoyinfa Decl., Ex. E (Evans Dkt. 19-5).) The Deputy Bureau Chief then provided this statement—which contained potentially exculpatory material—to Evans's criminal counsel via written letter, which Evans not only quoted directly in his FAC, but also annexed to his Opposition Memorandum. (Id.) Thus, by his own admission Evans had actual notice of this document.

Evans also relied upon other documents, the annexation of which to his Opposition Memorandum demonstrates that he had actual notice of materials from his criminal file. These documents included a police report dated April 28, 2010, which conveyed that the alleged victim's mother stated that the alleged victim had just run away from home for the fifth time (Awoyinfa Decl., Ex. D (Evans Dkt. 19-4)); a police report that described a My Space message sent from the alleged victim to her mother on May 9, 2010 (during the alleged kidnapping) and a phone call that same date from a confidential informant who stated that he saw the alleged victim on a street in Brooklyn (Awoyinfa Decl., Ex. C (Evans Dkt. 19-3)); and a document reflecting

Defendants' request for a forensic examination of the alleged crime scene (Awoyinfa Decl., Ex. B (Evans Dkt. 19-2)). In fact, counsel for Evans specifically indicated in his declaration that each of these documents were "part of the underlying criminal court file," and "thus a public record." (Awoyinfa Decl. at 1-2.) Thus Evans appears to argue that it was inappropriate for Judge Reyes to take judicial notice of certain extrinsic documents while Evans simultaneously relied upon equivalent documents in his FAC and in opposing Defendants' Motion—for the same not-for-truth purpose. Plaintiff, through "clever drafting," cannot have it both ways. See Global Network, 458 F.3d at 157. As a result, Judge Reyes was permitted to consider documents that were integral to Evans's Complaint and take judicial notice of public records without converting Defendants' motion into one for summary judgment. Therefore, Evans's first objection is overruled.[12]

### 2. Objection 2: False Arrest

Evans next objects to Judge Reyes's recommendation that Evans's false arrest claim be dismissed. To prove false arrest, a plaintiff must establish: "(1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged." Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995). "An arrest made on probable cause is privileged, and probable cause exists 'when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.'" Shain v. Ellison, 273 F.3d 56, 67-68 (2d Cir. 2001) (quoting Singer, 63 F.3d at 119). "When information is received from a putative victim or an eyewitness, probable cause exists, unless the circumstances raise doubt as to the

---

[12] Evans also includes a one-sentence objection based on Defendants' alleged failure to comply with the mandatory disclosure requirement of Federal Rule of Civil Procedure 26. (Evans Obj. at 4.) This objection is overruled for the same reasons that King's Rule 26 objection was overruled. See supra Part III.A.3.

person's veracity." Curley v. Vill. of Suffern, 268 F.3d 65, 70 (2d Cir. 2001) (internal citation omitted). Evans argues that Defendants did not have probable cause to arrest him based on the alleged victim's statement and identification of Plaintiffs because Defendants were aware of "credible sources of information that create[d] sufficient circumstances to raise doubts as to the alleged victim's veracity." (Evans Obj. at 6.) Because Evans paraphrases the same argument he made in his Opposition Memorandum, the court will review this portion of the R&R for clear error. See Jemine v. Dennis, 901 F. Supp. 2d 365, 371 (E.D.N.Y. 2012).

Evans contends that Judge Reyes erred by failing to take into account certain police reports that raised doubt as to the alleged victim's veracity. (Evans Obj. at 6.) This objection mischaracterizes the R&R. In fact, Judge Reyes specifically discussed both the April 28, 2010 complaint follow-up, which indicated that the alleged victim had been missing and had a history of running away, as well as the May 12, 2010 complaint follow-up, which documented the My Space message the alleged victim sent to her mother and the confidential informant's observation of the alleged victim on a street in Brooklyn—both during the alleged kidnapping. (R&R at 11.) Even after considering these reports, however, Judge Reyes concluded that they were insufficient to vitiate probable cause. First, he reasoned that "[w]hether the alleged victim felt suicidal or had a history of running away is not sufficient to raise doubt as to her veracity." (Id. (citing Escalera v. Lunn, 361 F.3d 737, 746 (2d Cir. 2004) ("knowledge of a victim witness's criminal or psychiatric history, alone, is not enough to destroy probable cause")).) Second, particularly with respect to the My Space message and confidential informant's observation, Judge Reyes pointed out that "[f]acts ostensibly sufficient to establish probable cause for an arrest are not negated simply because such facts also may be consistent with the suspect's innocence." (Id. (quoting United States v. Webb, 623 F.2d 758, 761 (2d Cir. 1980)).) Since this finding was not

clearly erroneous, Evans's objection is overruled.  See United States v. Traylor, 396 F. App'x

725, 727 (2d Cir. 2010) ("[T]he principle is 'well established that a showing of probable cause

cannot be negated simply by demonstrating that an inference of innocence might also have been

drawn from the facts alleged.'") (quoting Walczyk v. Rio, 496 F.3d 139, 157 (2d Cir. 2007)).

### 3.  Objection 3: Malicious Prosecution

Evans dedicates a significant portion of his objections to explaining how he pleaded facts

sufficient to state a claim for malicious prosecution (Evans Obj. at 7-10.)  He explicitly mentions

the R&R only once, however, arguing—two pages into the discussion—the following:

> The Magistrate has stated that . . . a grand jury indictment creates a
> presumption of probable cause for purposes of malicious
> prosecution.  However, for that principle of law to hold, the
> plaintiff must have failed to plead that the indictment was procured
> by fraud, perjury, the suppression of evidence by the police or
> other police conduct undertaken in bad faith.  However, this is
> exactly the position of the Plaintiff.  Plaintiff has pleaded sufficient
> facts in support of a claim of malicious prosecution based on fraud,
> suppression of evidence and other misconduct.

(Id. at 9 (internal citations omitted) (citing Evans FAC ¶¶ 7-17).)  This statement does not entitle

Evans to de novo review:  With the exception of the first five words, it is copied verbatim from

his Opposition Memorandum.  (See Evans Mem. in Opp'n to Mot. to Dismiss ("Opp'n Mem.")

(Evans Dkt. 18) at 10.)  In fact, the vast majority of this section of Evans's brief is copied word

for word from the equivalent portion of his Opposition Memorandum.  Compare Evans Opp'n

Mem. at 7-11, with Evans Obj. at 7-10.  As a result, this court reviews the relevant portion of the

R&R for clear error only.  See Jemine, 901 F. Supp. 2d at 371.  In the R&R, however, Judge

Reyes concluded that both King and Evans failed to state a claim for malicious prosecution

based upon the same reasoning, having analyzed the arguments and evidence proffered by both

Plaintiffs simultaneously.  (R&R at 25.)  Thus, for the same reasons that Judge Reyes did not

commit clear error in finding that King failed to state a claim for malicious prosecution, <u>see</u> supra Part III.A.2, Evans's objection is also overruled.

4.    Objection 4: Excessive Detention

While Evans titles a section of his Objection "Excessive Pre-Trial Detention," (Evans Obj. at 10), not only does he fail to object to a specific aspect of the R&R, he fails to so much as mention the R&R. Therefore, this portion of the R&R is reviewed for clear error. <u>See</u> <u>Libbey v. Vill. of Atl. Beach</u>, 982 F. Supp. 2d 185, 199 (E.D.N.Y. 2013). As he did with Plaintiffs' malicious prosecution claims, however, Judge Reyes concluded that both King and Evans failed to state a claim for excessive detention according to the same reasoning, having considered their allegations collectively. (R&R at 31.) Thus, for the same reasons that Judge Reyes did not commit clear error in finding that King failed to state a claim for excessive detention, <u>see</u> <u>supra</u> Part III.A.1, Evans's objection is also overruled.

5.    Objection 5: Speedy Trial Act Violation

Evans's objection regarding his Sixth Amendment claim consists of three sentences, none of which mentions the R&R or identifies a specific portion to which he objects. (<u>See</u> Evans Obj. at 11-12.) Instead, Evans's argument consists of conclusory allegations and a reference to his FAC. (<u>Id.</u>) He is therefore only entitled to clear error review. <u>See</u> <u>Mario v. P&C Food Mkts., Inc.</u>, 313 F.3d 758, 766 (2d Cir. 2002) ("[m]erely referring the court to previously filed papers or arguments does not constitute an adequate objection"). In his R&R, Judge Reyes laid out the four factors courts consider in determining whether a plaintiff's speedy trial right has been violated, including: (1) whether the delay before trial was "uncommonly long;" (2) whether the prosecution or the defendant was responsible for the delay; (3) whether the defendant asserted his right; and (4) whether the defendant suffered prejudice as a result of the delay. (R&R at 32

(citing Doggett v. United States, 505 U.S. 647, 651 (1992)).) Judge Reyes observed, however,

that the only evidence Evans offered to support his "blanket assertion" that he "clearly makes out

a claim for a violation of his Sixth Amendment right" was that he was in custody for nine months

(until he made bail) and that his case was not terminated until seventeen months after he was

arrested. (Id. at 32-33 (citing Evans Opp'n Mem. at 12).) In light of Evans's failure to plead

anything else with respect to the four factors, Judge Reyes's conclusion that Evans's Sixth

Amendment claim should be dismissed (id. at 33) was not clearly erroneous. This objection is

therefore overruled.

6.     Objection 6: Prosecutorial Liability

Evans next appears to argue that Judge Reyes erred in finding that Defendant Hynes was

entitled to absolute immunity because he was not performing an "advocative function" when he

allegedly "deliberately and maliciously withheld/concealed" from Evans's criminal defense

attorney "an avalanche of overwhelming exculpatory evidence" and thereby unlawfully detained

Evans. (Evans Obj. at 12; Evans FAC ¶¶ 28, 37, 40.) This attempt to simply rehash the same

argument Evans made before Judge Reyes also appears to be copied virtually word for word

from Evans's Opposition Memorandum.[13] Compare Evans Opp'n Mem. at 12, with Evans Obj.

at 12. Accordingly, this portion of Judge Reyes's R&R is reviewed for clear error. See Jemine,

901 F. Supp. 2d at 371. As Judge Reyes observed, the Supreme Court has "made clear that

absolute immunity may not apply when a prosecutor is not acting as an officer of the court, but is

instead engaged in other tasks, say investigative or administrative tasks." (R&R at 35 (quoting

Van de Kamp v. Goldstein, 555 U.S. 335, 342 (2009)).) He correctly noted, however, that "[a]

prosecutor is [·] entitled to absolute immunity despite allegations of the deliberate withholding of

---

[13] The only meaningful departure from the equivalent paragraph in his Opposition Memorandum is an additional sentence in which Evans provides that "Plaintiff relies on the averments contained in paragraphs '9' through '24' of his [FAC]." (Evans Obj. at 12.)

exculpatory information." (Id. at 36 (quoting Shumeli v. City of New York, 424 F.3d 231, 237

(2d Cir. 2005) (quoting Imbler v. Pachtman, 424 U.S. 409, 431 n.34 (1975))).)  Therefore, Judge

Reyes's conclusion that Evans's allegations regarding Defendant Hynes were protected by

absolute immunity was not clearly erroneous.  (R&R at 37.)  This objection is thus overruled.[14]

7.    Objection 7:  Municipal Liability

While Evans does not specify whether he objects to Judge Reyes's findings regarding

municipal liability under Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978), or

negligent hiring, training and retention under New York tort law, the last section of his

objections vaguely targets the City's liability.  (Evans Obj. at 12-13.)  Regardless, because this

portion of his brief has been copied word for word from his Opposition Memorandum, and

merely "relies [on] all judicial authorities cited supra as well as the facts pleaded in paragraphs

'41' through '46' of [his FAC] in support of the contention that there are adequately pleaded

facts to sustain the claim," Evans is entitled only to clear error review with respect to this

objection.  See Mario, 313 F.3d at 766; Jemine, 901 F. Supp. 2d at 371.  This review will address

Evans's allegation as both a Monell claim and a tort claim, out of "an abundance of caution."

(R&R at 38.)

a.    Section 1983 Municipal Liability Under Monell

"In order to sustain a claim for relief under 42 U.S.C. § 1983 against a municipal

defendant, a plaintiff must show the existence of an officially adopted policy or custom, and a

direct causal connection between that policy or custom and the deprivation of a constitutional

right."  Gordon v. City of New York, No. 10-CV-5148 (CBA) (LB), 2012 WL 1068023, at *3

(E.D.N.Y. Mar. 29, 2012) (citing Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997)).

---

[14] In this section of his Objection, Evans also appears to argue that Defendants are not entitled to qualified immunity.  (Evans Obj. at 12.)  This objection is overruled for the same reason that the identical objection made by Plaintiff King was overruled.  See supra note 7.

Moreover, even where a plaintiff has established a constitutional violation, "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." Brunskill v. Cnty. of Suffolk, No. 11-CV-586 (SJF) (ETB), 2012 WL 2921180, at *2 (E.D.N.Y. July 11, 2012) (quoting Ricciuti v. New York City Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991)); see also id. (observing that the policy or custom requirement is satisfied when a local government "is faced with a pattern of misconduct and does nothing, compelling the conclusion that [it] has acquiesced in or tacitly authorized its subordinates' unlawful actions") (quoting Reynolds v. Giuliani, 506 F.3d 183, 192 (2d Cir. 2007)).

Even assuming for the sake of argument that Evans had been able to establish a depravation of his constitutional rights, however, Judge Reyes pointed out that Evans's Complaint contains only "conclusory, boilerplate language" (R&R at 40), regarding the City's alleged policies and failure to train its employees. See Gordon, 2012 WL 1068023, at *4 ("[M]ere conclusory references to a policy or custom, with no supporting facts, will not suffice to state a claim of § 1983 municipal liability.") (citing Ricciuti, 941 F.2d at 124). Judge Reyes also noted that Evans "fail[ed] to plead any facts to support that the policy or custom reached beyond the single alleged incident of unconstitutional activity in his complaint that involved non-policymaking actors." (R&R at 40-41.) See Gordon, 2012 WL 1068023, at *4 ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which can be attributed to a municipal policymaker.") (quoting City of Oklahoma v. Turtle, 471 U.S. 808, 823-24 (1985)). Therefore, especially where Evans has failed to establish a constitutional violation in the first place, Judge Reyes's conclusion that Evans's

allegations are insufficient to render plausible his claim under <u>Monell</u> (R&R at 41) was not

clearly erroneous.

b. <em>Negligent Hiring, Training, and Retention</em>[15]

"To maintain a claim against a municipal employer for the 'negligent hiring, training, and

retention' of a tortfeasor under New York law, a plaintiff must show that the employee acted

'outside the scope of her employment.'" <u>Velez v. City of New York</u>, 730 F.3d 128, 136-37 (2d

Cir. 2013). In concluding that Evans had not stated a plausible claim for relief, Judge Reyes

pointed out that Evans "fail[ed] to allege anywhere in his complaint that the individual

Defendants acted outside the scope of their employment." (R&R at 42.) Since this, too, was not

clearly erroneous, Evans's objection to this portion of the R&R is overruled.

*    *    *

Significantly, Plaintiffs have not specifically objected to Judge Reyes's determination

that both complaints be dismissed <u>with prejudice</u>. (<u>See id.</u> at 3.) As a result, the court has

reviewed this recommendation for clear error only, and finds none. <u>See</u> <u>Curtis v. Citibank, N.A.</u>,

204 F. App'x 929, 932 (2d Cir. 2006) (summary order) ("This is not a case where the appellant

was unaware of the deficiencies in his complaint when he first amended it. Here the district

court, in dismissing the initial complaint, had put plaintiff's counsel on the plainest notice of

what was required.") (quoting <u>Denny v. Barber</u>, 576 F.2d 465, 471 (2d Cir. 1978)).[16]

---

[15] In their Response to Plaintiffs' Objections, Defendants argue that Evans's negligent hiring, training, and retention claim also fails as a matter of law because Evans did not file a Notice of Claim, as required by section 50 of the New York General Municipal Law. (Resp. to Pls.' Obj. (Evans Dkt. 24) at 15 (citing <u>Hyde v. Arresting Officer Caputo</u>, No. 98-CV-6722 (FB) (ASC), 2001 WL 521699, at *4 (E.D.N.Y. May 11, 2001) ("[I]n a federal court, state notice-of-claim statutes apply to state-law claims.")).) Because Defendants did not present this argument to Judge Reyes in the first instance, however, the court declines to consider it here. <u>See, e.g.</u>, <u>U.S. Flour Corp. v. Certified Bakery, Inc.</u>, 2012 WL 728227, at *2 (E.D.N.Y. Mar. 6, 2012) ("[E]ven in a <u>de novo</u> review of a party's specific objections, the court ordinarily will not consider arguments, case law and/or evidentiary material which could have been but were not [ ] presented to the magistrate judge in the first instance.") (internal quotation marks omitted).

[16] Evans could argue that he was not on notice of any deficiency in his Amended Complaint with respect to his claim for violation of his Sixth Amendment speedy trial right, since King's original Complaint did not include such a

25

## IV.  CONCLUSION

For the reasons set forth above, all of Plaintiffs' objections are OVERRULED.

Therefore, the court ADOPTS the R&R in its entirety.  Accordingly, Defendant's Motion to

Dismiss is GRANTED in full.  The Clerk of Court is respectfully directed to enter judgment and

close the case.

SO ORDERED.

Dated: Brooklyn, New York
      September 30, 2014

S/ Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge

---

claim and it was therefore not addressed in the April 2013 R&R.  As Judge Reyes pointed out, however, Evans asserted his right to a speedy trial only once during the pendency of the underlying criminal action.  (R&R at 33 (citing Evans Dkt. 17, Ex. I.)  Therefore, the deficiency in Evans's speedy trial claim is "substantive and not a matter of inartful pleading."  (R&R at 33.)  See United States ex rel. Eccleston v. Henderson, 534 F. Supp. 813, 816 (E.D.N.Y.) (eighteen month delay between arrest and trial did not violate defendant's Sixth Amendment right where delay was caused in part by defendant's motions, defendant asserted his right only once, and the defense preparation was not prejudiced by the time lag), aff'd, 697 F.2d 289 (2d Cir. 1982).  Accordingly, Judge Reyes did not clearly err in recommending that this claim also be dismissed with prejudice.  See Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (holding that where repleading would be futile, a request to replead should be denied).